DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROMULISS JARVIS HICKS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-904

[January 27, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Matthew I. Destry, Judge; L.T. Case No. 09019556CF10A.

Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Romuliss Hicks was sentenced to thirty months of probation after pleading no contest to robbery and aggravated assault charges in 2011. In 2013, Appellant was charged with violating his probation by committing burglary. The trial court found that Appellant had violated his probation and sentenced Appellant to five years' incarceration. Appellant appeals, arguing the trial court should have suppressed an in-court identification and allowed him to present mitigation evidence during sentencing. We affirm the sentencing issue without comment and write solely to address the suppression issue. Because the trial court did not err, we affirm Appellant's conviction.

**Background**

Appellant was charged with violating his probation after being implicated in the burglary of a gun store in Pompano Beach. Testimony at trial established that the store's silent alarm was triggered in the early morning hours, prompting officers to arrive and create a perimeter around

the building.  The officers found one of the store's windows broken and damage inside the store.  One officer ("the observing officer") saw a black man wearing black shorts and a black shirt exit the rear of the store and run west along the nearby railroad tracks.  He radioed this description to other officers in the area.

A different officer spotted Appellant within the perimeter around the store and detained him.  This officer ("the detaining officer") admitted he had not heard the observing officer's description and stopped the Appellant solely because he was inside the perimeter.  The observing officer joined the detaining officer and identified Appellant as the man he saw fleeing the store.  A search of Appellant's person revealed that he had white powder or chunks of plaster on his clothes and shards of broken glass in the upper rim of his shoes.

At trial, the court ruled that the detaining officer's stop of Appellant was unconstitutional, finding that the detaining officer lacked articulable suspicion for a *Terry* stop as he stopped him solely for being inside the established perimeter.  *See Terry v. Ohio*, 392 U.S. 1 (1968).  The trial court suppressed everything that occurred after the stop, including the physical evidence found on Appellant's shoes and clothes.  However, the trial court allowed testimony from the observing officer as to his observation of Appellant prior to the stop.  The observing officer testified that Appellant was the man he saw running from the scene of the crime.  The trial court accepted the veracity of this testimony and found that Appellant had violated his probation.

**Analysis**

The exclusionary rule, the preferred remedy for constitutional violations, hides illegally obtained evidence from the trier of fact.  To aid in creation and application of this legal fiction, courts have also adopted the "fruit of the poisonous tree" doctrine.  This principle, first established in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920), although not given its present name until *Nardone v. United States*, 308 U.S. 338 (1939), dictates that "the exclusionary rule bars the admission at trial of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of the police illegality."  *Wells v. State*, 975 So. 2d 1235, 1238 (Fla. 4th DCA 2008) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963)).

In the case at hand, Appellant argues that the trial court should not have allowed the in-court identification by the observing officer.  An in-court identification "may not be admitted 'unless it is found to be reliable

2

and based solely upon the witness'[s] independent recollection of the offender at the time of the crime,' uninfluenced by any intervening illegal confrontation." *Fitzpatrick v. State*, 900 So. 2d 495, 519 (Fla. 2005) (quoting *Edwards v. State*, 538 So. 2d 440, 442 (Fla. 1989)).

> In gauging the reliability of an in-court identification, the trial judge must consider the following factors: the prior opportunity the witness had to observe the alleged criminal act; the existence of any discrepancy between any pretrial lineup description and the defendant's actual description; any identification prior to the lineup of another person; any identification by picture of the defendant prior to the lineup; failure to identify the defendant on a prior occasion; any time lapse between the alleged act and the lineup identification; and any other factors raised by the totality of the circumstances that bear upon the likelihood that the witness'[s] in-court identification is not tainted by the illegal lineup.

*Edwards*, 538 So. 2d at 443 (citing *United States v. Wade*, 388 U.S. 218, 241(1967)). Appellant argues the trial court improperly considered the factors specified in *Anderson v. State*, 946 So. 2d 579 (Fla. 4th DCA 2006), which apply to the admission of an out-of-court identification. However, the *Edwards* court specifically noted the substantial overlap between the factors enumerated in *Neil v. Biggers*, 409 U.S. 188 (1972) (on which *Anderson* relies) and the ones it provided for in-court identifications. The trial court did not err by considering these factors.

In this case, the trial court found that the in-court identification was reliable, as the officer had a "good opportunity" to see Appellant running from the building, the identification at the stop was not conducted in an overly suggestive manner, and the out-of-court identification was done quickly. The in-court identification was also based "'upon the witness'[s] independent recollection of the offender at the time of the crime.'" *Fitzpatrick*, 900 So. 2d at 519 (quoting *Edwards*, 538 So. 2d at 442). Therefore, the trial court properly allowed the officer to identify the Appellant as the man he saw fleeing the scene of the crime.

Appellant also contends his identity itself should have been suppressed based on the unconstitutional stop and likens this case to *State v. Perkins*, 760 So. 2d 85 (Fla. 2000), and *Garrett v. State*, 946 So. 2d 1211 (Fla. 2d DCA 2006). In *Perkins*, a defendant was illegally stopped while driving. *Perkins*, 760 So. 2d at 85. During the stop, the police obtained the defendant's license and discovered it was suspended. *Id.* This Court and

the Supreme Court both held that the information obtained in the stop, including the defendant's identity as the driver and his driving record, should be suppressed where "[i]t is clear that in the instant case the evidence required to prosecute the charge of driving with a suspended license came directly from the exploitation of the unlawful stop." *Id.* at 88; *see also Delafield v. State*, 777 So. 2d 1020, 1021 (Fla. 2d DCA 2000) ("In a prosecution for driving with a suspended license, the essential evidence consists of the officer's discovery of the identity of the defendant as the driver at the time of the arrest. When the stop is tainted, so is the identification evidence.").

In *Garrett*, the defendant had previously been placed on community control and was not allowed to be away from his residence without permission. *Garrett*, 946 So. 2d at 1212. He was stopped by a police officer in the parking lot of a convenience store. *Id.* The trial court found this stop to be unlawful and suppressed all evidence found at the stop, but allowed the officer to identify the defendant as the man he had seen in the parking lot. *Id.* at 1213. Based on this identification, the court found that the defendant had violated his community control by being out of his residence without permission. *Id.* The Second DCA reversed, holding that the identification of the defendant should have been suppressed as well. *Id.* at 1213-14. The Second DCA reasoned:

> It was only because the deputy made the illegal seizure that he learned Garrett's identity. And it was only because of the illegal seizure that the community control supervisor learned that Garrett may have violated the terms of his community control by being outside his residence at the time of the seizure.

*Id.* at 1214.

*Perkins*, *Delafield*, and *Garrett* are distinguishable from the current case. In these three cases, the officers could not have known the defendants had committed a crime until they discovered incriminating information *during* the illegal stops (Perkins and Delafield were driving with suspended licenses and Garrett was on residential detention). In the instant case, by contrast, none of the information learned during the detaining officer's detention of Appellant was permitted to be used in the trial, other than Appellant's name. The incriminating evidence (Appellant fleeing the scene of the burglary) was obtained as a result of the observing officer's observation *prior to* the illegal stop.

**Conclusion**

4

The information used to identify Appellant in court was obtained prior to, and independently of, the illegal stop. To hold that an illegal stop justifies the suppression of not just subsequently and consequently obtained evidence, but also evidence obtained *prior to* the stop would create a new rule, the "root of the poisonous tree" doctrine, out of whole cloth. We decline to do so. Appellant's conviction is therefore affirmed.

*Affirmed.*

STEVENSON, J., concurs.
WARNER, J., dissents with opinion.

WARNER, J., *dissenting.*

I dissent, because the identity (name) of the appellant was only acquired as a result of the illegal stop. There was no evidence that any independent investigation would have discovered the identity of the appellant or his participation in the burglary. *See Garrett v. State*, 946 So. 2d 1211, 1214 (Fla. 2d DCA 2006).

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***